## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NAKEEYA CHANTEL FUTRELL, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| SOUTHEASTRANS, INC., and RONSON WYLIE | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Nakeeya Chantel Futrell ("Plaintiff" or "Futrell"), by and through the undersigned counsel of record, and hereby files this Complaint for Damages against Defendants Southeastrans, Inc., and Ronson Wylie (*collectively*, "Defendants"), respectfully showing the Court as follows:

## JURISDICTION AND VENUE

### 1.

The above-captioned case is commenced pursuant to:  (a) 42 U.S.C. §§ 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") for pregnancy discrimination; (b) the Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA") for pregnancy discrimination; (c)

29 U.S.C.§§ 701, *et seq.*, the Rehabilitation Act of 1973 ("Rehab Act") for disability discrimination and retaliation; and (d) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

This Court has original jurisdiction over Plaintiff's Title VII, ADA, and Rehab Act claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's State law claim pursuant to 28 U.S.C. § 1367.

3.

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because Defendants reside and maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful employment practices forming the basis of the Complaint occurred in this District and Division.

4.

Plaintiff satisfied all administrative prerequisites to institute this action. Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2019-07712) and Plaintiff has timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated August 27, 2020.

## **PARTIES**

### 5.

Futrell is a female citizen of the United States, resident of the State of Georgia, and entitled to bring an action of this nature and type.

### 6.

Futrell is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

### 7.

At all times relevant to the above-captioned case, Futrell was an employee of Southeastrans, Inc., within the meaning of, *inter alia*, Title VII and the ADA.

### 8.

Defendant Southeastrans, Inc., ("Southeastrans") is domestic profit corporation (Control Number 0004654) authorized to do, and is actually doing, business in the State of Georgia.

### 9.

Southeastrans is a Medicaid transportation provider located at 4751 Best Road, Suite 300, Atlanta, Georgia 30337.

10.

At all relevant times, Southeastrans received, *inter alia*, Federal financial assistance and funding related to Medicaid.

11.

Southeastrans may be served with Summons and this Complaint for Damages via its Registered Agent, Steve T. Minor, TisingerVance, PC, 100 Wagon Yard Plaza, Carrollton, Georgia 30117.

12.

Southeastrans is and was, at all relevant times, a private employer engaged in an industry affecting commerce within the meaning of Title VII and the ADA, employing more than fifty (50) employees for each working day in each of twenty (20) or more calendar weeks in the current and preceding calendar years.

13.

Defendant Ronson Wylie ("Wylie") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

14.

Wylie is and was, at all relevant times, an employee of Southeastrans, Director of Call Center Operations with Southeastrans, involved in the day-to-day operation of Southeastrans, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Southeastrans.

15.

Wylie is an employee of Southeastrans and, at all relevant times, Wylie was Futrell's direct supervisor, who participated in the unlawful discriminatory and tortious conduct described herein

16.

Wylie may be served with process at Southeastrans located at 4751 Best Road, Suite 300, Atlanta, Georgia 30337.

## STATEMENT OF FACTS

17.

Southeastrans is a Medicaid transportation provider located at 4751 Best Road, Suite 300, Atlanta, Georgia 30337.

18.

Medicaid is a program, administered by States and funded with State and Federal monies, that provides health coverage to low-income adults, children, pregnant women, and people with disabilities.

19.

At all relevant times, Southeastrans received, *inter alia*, Federal financial assistance and funding related to Medicaid—Southeastrans *purports* to manage transportation programs, including Medicaid non-emergency medical transportation.

20.

Futrell is a thirty-three (33) year old female and, at all relevant times, Futrell was pregnant.

21.

At all relevant times, Futrell was a qualified individual under, *inter alia*, the ADA and Rehab Act.

22.

After obtaining a Graduate Equivalency Diploma or General Educational Diploma (GED), Futrell attended the Everest Institute, where Futrell received a Medical Assisting certificate.

23.

Before working for Southeastrans, Futrell was employed as a Customer Service Representative by Logisticare, located in College Park, Georgia, where Futrell scheduled medical transportation for Medicare patients.

24.

In or about August 2017, Wylie began working for Southeastrans as a Call Center Operations Manager, responsible for, *inter alia*, recruiting, hiring, training, and coaching Southeastrans employees, providing performance evaluations and disciplinary actions, creating team development, as well as working with teams within Southeastrans.  In or about May 2019, Wylie became Southeastrans' Director for Call Center Operations, responsible for, *inter alia*, overseeing Southeastrans' daily business activities, managing resources, developing and implementing operational plans, evaluating organizational efficiency, as well as accessing the needs of Southeastrans.  At all relevant times, Wylie served as Futrell's supervisor.

25.

On or about November 14, 2018, Futrell began working for Southeastrans as a Dispatcher, responsible for utilizing software to develop, alter, and optimize routes, communicating and serving as a liaison between clients and drivers, as well as performing other assigned tasks.

26.

At all relevant times, Futrell diligently performed all tasks while meeting or exceeding all performance expectations as a Dispatcher.  For example, Southeastrans routinely monitored and evaluated Dispatcher calls.  After receiving multiple quality assurance scores of 100, Futrell received raffle tickets for a drawing to win a prize.

27.

After becoming pregnant, in November 2018, Futrell began receiving medical examinations from healthcare providers who determined that Futrell's pregnancy was high-risk because the child was a Breech baby, *i.e.*, in a head first position in the uterus.  Due to the high risk pregnancy, Futrell experienced constant nausea and extreme restlessness.   Additionally, Futrell began receiving examinations and treatments from a medical specialist.

28.

After completing certain training in November 2018, Futrell verbally advised Wylie of Futrell's pregnancy in December 2018.  In response, Wylie scheduled a meeting between Futrell and Pamela Ballard ("Ballard") in Southeastrans' Human Resource Department.  When discussing Futrell's high risk pregnancy during the scheduled meeting, Ballard instructed Futrell to return 30 days prior to taking leave to complete certain FMLA documents.

29.

While employed by Southeastrans, Futrell became visibly pregnant and Futrell repeatedly confirmed and acknowledged Futrell's high risk pregnancy.

30.

Despite knowledge of Futrell's high risk pregnancy, Defendants sought to force Futrell to resign.  For example, Defendants refused to approve certain requests for time-off for doctor's visits.  Moreover, Defendants began to warn Futrell about bathroom and water breaks associated with the high-risk pregnancy.

31.

As instructed, in or about April 2019, Futrell again met with Ballard, who discussed Futrell's high risk pregnancy and provided Futrell with certain FMLA documents to be completed by Futrell's physician.

32.

In accordance with Ballard's instructions, Futrell brought the FMLA documents to Futrell's next medical appointment.   However, because Futrell's physician was not present, Futrell kept the documents in Futrell's vehicle.  Prior to the next medical appointment, Futrell's vehicle and FMLA documents were stolen.

33.

On or about April 22, 2019, Wylie attempted to convince Futrell to resign due to Futrell's high-risk pregnancy.  Specifically, Wylie requested that Futrell resign because Futrell was on a "final" warning.  According to Wylie, it was best for Futrell to resign and return to Southeastrans following childbirth because Futrell would likely be terminated due to additional absences related to the high-risk pregnancy. Wylie explained that, if Defendants terminated Futrell's employment, Futrell would not be permitted to resume employment following childbirth.

34.

Despite Wylie's efforts to force Futrell's resignation due to the high-risk pregnancy, Futrell refused to resign and stated that she would continue to diligently and professionally perform as a Dispatcher.

35.

Because Wylie had attempted to force Futrell to resign due to Futrell's pregnancy, Futrell feared that, if she complained about Wylie's conduct or the other issues Futrell was experiencing at Southeastrans, Defendants would terminate Futrell's employment, which was needed to support Futrell's children.

36.

As a result of Wylie's efforts to force Futrell to resign due to the high-risk pregnancy, Futrell began experiencing stress and anxiety as Futrell persevered to maintain employment.  In this regard, Futrell began to attempt to arrive early for shifts because employees who arrived an hour early received a point off their attendance records.  Although experiencing exhaustion, nausea, and physical difficulties associated with the high-risk pregnancy, Futrell continued to attempt to arrive early and perform diligently.

37.

In May 2019, Futrell called both Ballard and Wylie to discuss the theft of Futrell's vehicle and FMLA documents.  Subsequently, Ballard faxed the FMLA documents to Futrell's physician.  As instructed and requested, Futrell's physician completed and returned the FMLA documents to Ballard.

38.

Despite Wylie's attempt to force Futrell's resignation and feared termination of employment, based upon physician instructions, on or about May 10, 2019, Futrell took maternity leave.

39.

Defendants never advised Futrell that there was any issue with the maternity leave.

40.

On or about June 10, 2019, Futrell was admitted to the hospital due to complications and medical issues related to the high risk pregnancy.

41.

While Futrell was on maternity leave, on or about June 17, 2019, Defendants stated, via e-mail, that Futrell's employment was terminated because of *purported* attendance "points."

42.

Under no uncertain terms, Defendants terminated Futrell's employment and punished Futrell based solely upon Futrell's pregnancy.

43.

Except for the warnings associated with Futrell's need to take bathroom and water breaks associated with the high-risk pregnancy, prior to the discriminatory termination of employment described herein, Futrell had not received negative performance reviews, disciplinary actions, or complaints concerning Futrell's professional performance.

44.

Other employees and individuals, outside of Futrell's protected class, were treated differently because these employees and individuals, who were not pregnant, were not terminated or otherwise subjected to adverse employment actions associated with bathroom and water breaks.

45.

Futrell was qualified and capable of resuming employment as a Dispatcher following maternity leave.

46.

As a result of Defendants' unlawful actions, Futrell has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

**CLAIMS FOR RELIEF**

**COUNT I:**
**PREGNANCY DISCRIMINATION**
**IN VIOLATION OF TITLE VII AND ADA**
**(Against Defendant Southeastrans)**

47.

Futrell re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

48.

Title VII and the ADA prohibits employers from discriminating against employees because of pregnancy.

49.

Defendants violated Title VII and the ADA, such that a cause of action exists where discrimination on the basis of pregnancy was the causative agent of adverse actions directed at Futrell by Defendants.

50.

At all relevant times, Futrell was a pregnant female, qualified individual under the ADA, employee of Southeastrans, and a member of a protected class under Title VII and the ADA.

51.

At all relevant times, Futrell was qualified for her position, and capable of performing, as a Dispatcher.

52.

At all relevant times, Southeastrans was Futrell's employer, as defined by Title VII and ADA.

53.

At all relevant times, Wylie was Southeastrans' Director and Futrell's direct supervisor, responsible for, among other things, hiring and terminating Futrell's employment.

54.

At all relevant times, Wylie was Southeastrans' Director and Futrell's direct supervisor, responsible for, among other things, hiring and terminating Futrell's employment.

55.

Defendants explicitly stated that it would be best if Futrell resigned and returned to Southeastrans following the birth of Futrell's child because Futrell would likely be terminated due to additional missed days related to the high-risk pregnancy.

56.

With the knowledge that Futrell was pregnant, Defendants terminated Futrell's employment solely because of the pregnancy.

57.

While Futrell was on maternity leave, Defendants terminated Futrell's employment based solely upon Futrell's high-risk pregnancy.

58.

Defendants' termination of Futrell's employment due to pregnancy constitutes unlawful discrimination on the basis of pregnancy in violation of Title VII and the ADA.

59.

As a result of the termination of employment based solely upon Futrell's pregnancy, Futrell was treated less-favorably than similarly-situated, non-pregnant employees of Southeastrans in violation of Title VII and the ADA.

60.

Defendants willfully and wantonly disregarded Futrell's rights.

61.

Defendants willfully and wantonly disregarded Futrell's rights.

62.

Defendants discriminated against Futrell in bad faith.

63.

The effect of the conduct complained of herein has been to deprive Futrell of equal employment opportunity and to otherwise adversely affect Futrell's status as an employee solely because of Futrell's pregnancy.

64.

As a direct and proximate result of Defendants' intentional violation of Title VII, Futrell has been made the victim of acts that have adversely affected Futrell's psychological and physical well-being and, therefore, Defendants are liable for these damages.

**COUNT II**
**DISABILITY DISCRIMINATION**
**IN VIOLATION OF THE REHAB ACT**
**(Against Defendant Southeastrans)**

65.

Futrell re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

66.

The Rehab Act prohibits entities receiving Federal financial assistance from discriminating against otherwise qualified persons with disabilities in the terms, conditions, or privileges of employment.

67.

At all relevant times, Southeastrans received, *inter alia*, Federal financial assistance and funding related to Medicaid.

68.

At all relevant times, the relationship between Futrell and Southeastrans was a relationship of "employee" to "employer," such that a cause of action exists where discrimination based on disability is alleged to be the cause of an adverse action directed to the employee by the employer..

69.

At all relevant times, Southeastrans acted by and through its agents and employees, each of whom acted within the course and scope of their respective employment with and for Southeastrans.

70.

During Futrell's employment with Southeastrans, Futrell was a qualified individual with a disability, which substantially impaired one or more major life activities, as defined by the Rehab Act.

71.

Southeastrans regarded Futrell as having a qualified disability.

72.

During Futrell's employment, Southeastrans had notice and knew of Futrell qualified disability after, *inter alia*, Futrell notified Defendants of the high risk pregnancy, Futrell requested leave for medical appointments, and Futrell required frequent bathroom and water breaks associated with the high risk pregnancy.

73.

Although Futrell requested certain reasonable accommodations that would have allowed Futrell to continue performing the essential functions of Futrell's position, Defendants failed to grant a reasonable accommodation, impaired Futrell's ability to make medical appointments, and punished Futrell who needed to take bathroom and water breaks associated with the high risk pregnancy.

74.

Defendants terminated Futrell's employment because of Futrell's qualified disability and request/need for a reasonable accommodation.

75.

Consequently, Futrell was unlawfully subjected to discrimination because of an actual disability, a record of disability, and/or being regarded as an individual with disability.

76.

As a proximate and direct result of Defendants' conduct, Futrell has suffered, and continues to suffer, damages, including, but not limited to, emotional distress, inconveniences, loss of income and benefits, for which Futrell is entitled to recover in an amount to be determined by the enlightened conscience of the jury.

77.

Defendants' actions were willful, intentional, malicious, and conducted in bad faith with callous and/or reckless indifference to Futrell's Federally-protected rights, thereby entitling Futrell to an award of punitive damages.

## COUNT III
## RETALIATION
## IN VIOLATION OF THE REHAB ACT
**(Against Defendant Southeastrans)**

78.

Futrell re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

79.

The Rehab Act prohibits retaliation against an employee who opposes discrimination on the basis of disability.

80.

Futrell requested reasonable accommodation for her qualified disability that impaired one or more major life activities, conduct protected by the Rehab Act.

81.

After learning of Futrell's high risk pregnancy, Defendants attempted to force Futrell to resign employment due to the pregnancy.

82.

Despite Defendants' efforts, Futrell refused to resign, advised Defendants that Futrell would continue to diligently perform, and even attempted to arrive early for scheduled shifts.

83.

Following Futrell's objection to Defendants' efforts to force resignation of employment and requests to continue performing under a reasonable accommodation(s), Defendants refused to approve time-off for doctor's visits and began to warn Futrell, who was required to take bathroom and water breaks associated with the high-risk pregnancy, before terminating employment due to Futrell's high risk pregnancy.

84.

Defendants' adverse employment actions against Futrell constitute unlawful retaliation against Futrell in violation of the Rehab Act.

85.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Futrell harm and/or were committed with reckless disregard of the harm causes to Futrell in derogation of Futrell's Federally-protected rights.

86.

As a direct and proximate result of Defendants' retaliation, Futrell has suffered financial losses, been deprived of employment, and otherwise lost compensation in the form of, *inter alia*, wages, insurance, retirement benefits, social security benefits, and other due benefits.

87.

Defendants' retaliation has also caused, continues to cause, and will cause Futrell to suffer injuries, warranting an award of compensatory and punitive damages in an amount to be determined at trial.

88.

Futrell is entitled to recover attorney's fees and litigation expenses.

## COUNT IV:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants Southeastrans and Wylie)

### 89.

Futrell re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

### 90.

Defendants' statements, conduct, and behavior towards Futrell were intentional and reckless, extreme and outrageous, causing Futrell severe shame, humiliation, embarrassment, and emotional distress of a nature that no pregnant person should endure.

### 91.

Defendants' statements, conduct, and behavior towards Futrell demonstrate, among other things, a "retaliatory animus."

### 92.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Futrell and Futrell's income and/or livelihood during Futrell's high-risk pregnancy.

93.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Futrell, Defendants knew that Futrell was pregnant.

94.

Defendants told Futrell that Futrell should resign, was receiving warnings, and that Futrell's employment was being terminated solely due to Futrell's pregnancy.

95.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Futrell.

96.

As a result of Defendants' conduct, Futrell has and will continue to suffer severe emotional distress and other damages for which Futrell is entitled to recover.

## COUNT VI
## NEGLIGENT RETENTION AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW
**(Against Defendant Southeastrans)**

97.

Futrell re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

98.

As a result of the actions taken by Wylie, Futrell suffered, among other things, discrimination based on pregnancy and disability, as well as retaliation.

99.

Southeastrans owed Futrell a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory, retaliatory, or tortious conduct.

100.

By negligently retaining and supervising its employees, including Wylie, Southeastrans breached its duty to hire, retain, and supervise an employee who would lawfully behave.

101.

Southeastrans knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Futrell.

102.

By failing to engage in any corrective or remedial action, Southeastrans ratified, condoned, and/or adopted its employees' unlawful conduct.

103.

As a direct and proximate result of Southeastrans' negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by Southeastrans' employees, including Wylie, Futrell suffered damages.

104.

Southeastrans' negligent conduct entitles Futrell to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Futrell respectfully requests that this Court:

(1)     Grant Futrell a trial by jury as to all triable issues of fact;

(2)     Grant declaratory judgment that Futrell's rights under Title VII, ADA, and Rehab Act were violated;

(3)     Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(4)     Award compensatory damages in an amount to be determined by a jury;

(5)     Award appropriate back wages, future wages, and compensation for other damages in amounts to be shown at trial;

(6)     Award prejudgment interest on any award of back pay;

(7)     Award liquidated damages;

(8)     Award punitive damages in an amount reasonable and commensurate

with the harm done and calculated to deter such conduct in the future;

(9)     Award Futrell's attorneys' fees, costs, and disbursements; and

(10)    Award Futrell such further and additional relief as may be just and

appropriate.

Respectfully submitted, this 17th day of November, 2020.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Nakeeya Chantel Futrell*

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| NAKEEYA CHANTEL FUTRELL, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| SOUTHEASTRANS, INC., and RONSON WYLIE | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>LOCAL RULE AND SERVICE CERTIFICATION</u>

The undersigned certifies that this document has been prepared with a font and point selections approved by the Court in Local Rule 5.1(B) and that the foregoing **Complaint for Damages** has been filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 17th day of November, 2020.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406