# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| NAKEEYA CHANTEL FUTRELL, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. 1:20-cv-04674 |
| SOUTHEASTRANS, INC., and RONSON WYLIE | The Honorable William M. Ray, II<br>The Honorable Regina D. Cannon |
| Defendants. | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Nakeeya Chantel Futrell ("Plaintiff" or "Futrell"), by and through the undersigned counsel of record, and hereby files this Amended Complaint for Damages against Defendants Southeastrans, Inc., and Ronson Wylie (*collectively*, "Defendants"), respectfully showing the Court as follows:[1]

---

[1] Futrell commenced the above-captioned case on November 17, 2020. (Doc. no. 1). On December 23, 2020, Defendants filed a partial answer and partial motion to dismiss pursuant to Federal Rule of Civil Procedure ("Federal Rule") 12(b). (Doc. nos. 9-10). As such, Futrell is permitted, as a matter of course, to file this Amended Complaint for Damages, Fed. R. Civ. P. 15(a)(1), which supersedes and replaces the original Complaint for Damages. E.g., Varnes v. Glass Bottle Blowers Asso., 674 F.2d 1365, 1370 n.6 (11th Cir. 1982). Consequently, Defendants' partial motion to dismiss is now moot. See, e.g., Locascio v. BBDO Atlanta, Inc., 56 F. Supp. 3d 1356, 1359 n.2 (N.D. Ga. 2014) (denying motion to dismiss as moot, where the

## JURISDICTION AND VENUE

1.

The above-captioned case is commenced pursuant to: (a) 42 U.S.C. §§ 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") for pregnancy discrimination; (b) the Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA") for pregnancy discrimination; (c) 29 U.S.C.§§ 701, *et seq.*, the Rehabilitation Act of 1973 ("Rehab Act") for disability discrimination and retaliation; and (d) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

This Court has original jurisdiction over Plaintiff's Title VII, ADA, and Rehab Act claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's State law claim pursuant to 28 U.S.C. § 1367.

---

plaintiff filed, as a matter of course, an amended complaint superseding and replacing the original complaint).

3.

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because Defendants reside and maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful employment practices forming the basis of the Complaint occurred in this District and Division.

4.

Plaintiff satisfied all administrative prerequisites to institute this action. Specifically, Plaintiff timely submitted, *inter alia*, a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2019-07712) and Plaintiff has timely commenced the above-captioned case within ninety (90) days of receipt of the August 27, 2020, Dismissal and Notice of Rights.[2]

**PARTIES**

5.

Futrell is a female citizen of the United States, resident of the State of Georgia, and entitled to bring an action of this nature and type.

---

[2] Attached hereto, and expressly incorporated herein, as "Exhibit 1" is a true and correct copy of the Notice of Right to Sue.

6.

Futrell is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

7.

At all times relevant to the above-captioned case, Futrell was an employee of Southeastrans, Inc., within the meaning of, *inter alia*, Title VII and the ADA.

8.

Defendant Southeastrans, Inc., ("Southeastrans") is domestic profit corporation (Control Number 0004654) authorized to do, and is actually doing, business in the State of Georgia.

9.

Southeastrans is a Medicaid transportation provider located at 4751 Best Road, Suite 300, Atlanta, Georgia 30337.

10.

At all relevant times, Southeastrans received, *inter alia*, Federal financial assistance and funding related to Medicaid.

11.

Southeastrans may be served with Summons and this Complaint for Damages via its Registered Agent, Steve T. Minor, TisingerVance, PC, 100 Wagon Yard Plaza, Carrollton, Georgia 30117.

12.

Southeastrans is and was, at all relevant times, a private employer engaged in an industry affecting commerce within the meaning of Title VII and the ADA, employing more than fifty (50) employees for each working day in each of twenty (20) or more calendar weeks in the current and preceding calendar years.

13.

Defendant Ronson Wylie ("Wylie") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

14.

Wylie is and was, at all relevant times, an employee of Southeastrans, Director of Call Center Operations with Southeastrans, involved in the day-to-day operation of Southeastrans, and regularly exercised authority to:   (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Southeastrans.

15.

Wylie is an employee of Southeastrans and, at all relevant times, Wylie was Futrell's direct supervisor, who participated in the unlawful discriminatory and tortious conduct described herein

16.

Wylie may be served with process at Southeastrans located at 4751 Best Road, Suite 300, Atlanta, Georgia 30337.

## STATEMENT OF FACTS

17.

Southeastrans is a Medicaid transportation provider located at 4751 Best Road, Suite 300, Atlanta, Georgia 30337.

18.

Medicaid is a program, administered by States and funded with State and Federal monies, that provides health coverage to low-income adults, children, pregnant women, and people with disabilities.

19.

At all relevant times, Southeastrans received, *inter alia*, Federal financial assistance and funding related to Medicaid—Southeastrans *purports* to manage transportation programs, including Medicaid non-emergency medical transportation.

20.

Futrell is a thirty-three (33) year old female and, at all relevant times, Futrell was pregnant.

21.

At all relevant times, Futrell was a qualified individual under, *inter alia*, the ADA and Rehab Act.

22.

After obtaining a Graduate Equivalency Diploma or General Educational Diploma (GED), Futrell attended the Everest Institute, where Futrell received a Medical Assisting certificate.

23.

Before working for Southeastrans, Futrell was employed as a Customer Service Representative by Logisticare, located in College Park, Georgia, where Futrell scheduled medical transportation for Medicare patients.

24.

In or about August 2017, Wylie began working for Southeastrans as a Call Center Operations Manager, responsible for, *inter alia*, recruiting, hiring, training, and coaching Southeastrans employees, providing performance evaluations and disciplinary actions, creating team development, as well as working with teams within Southeastrans.  In or about May 2019, Wylie became Southeastrans' Director for Call Center Operations, responsible for, *inter alia*, overseeing Southeastrans' daily business activities, managing resources, developing and implementing operational plans, evaluating organizational efficiency, as well as accessing the needs of Southeastrans.  At all relevant times, Wylie served as Futrell's supervisor.

25.

On or about November 14, 2018, Futrell began working for Southeastrans as a Dispatcher, responsible for utilizing software to develop, alter, and optimize routes, communicating and serving as a liaison between clients and drivers, as well as performing other assigned tasks.

26.

At all relevant times, Futrell diligently performed all tasks while meeting or exceeding all performance expectations as a Dispatcher.  For example, Southeastrans

routinely monitored and evaluated Dispatcher calls. After receiving multiple quality assurance scores of 100, Futrell received raffle tickets for a drawing to win a prize.

27.

After becoming pregnant, in November 2018, Futrell began receiving medical examinations from healthcare providers who determined that Futrell's pregnancy was high-risk because the child was a Breech baby, *i.e.*, in a head first position in the uterus. Due to the high risk pregnancy, Futrell experienced constant nausea and extreme restlessness. Additionally, Futrell began receiving examinations and treatments from a medical specialist.

28.

After completing certain training in November 2018, Futrell verbally advised Wylie of Futrell's pregnancy in December 2018. In response, Wylie scheduled a meeting between Futrell and Pamela Ballard ("Ballard") in Southeastrans' Human Resource Department. When discussing Futrell's high risk pregnancy during the scheduled meeting, Ballard instructed Futrell to return 30 days prior to taking leave to complete certain FMLA documents.

29.

While employed by Southeastrans, Futrell became visibly pregnant and Futrell repeatedly confirmed and acknowledged Futrell's high risk pregnancy.

30.

Despite knowledge of Futrell's high risk pregnancy, Defendants sought to force Futrell to resign.  For example, Defendants refused to approve certain requests for time-off for doctor's visits.  Moreover, Defendants began to warn Futrell about bathroom and water breaks associated with the high-risk pregnancy. Defendants' statements, actions, and interference with Futrell's medically-needed breaks during the high-risk pregnancy caused Futrell to worry about the health of her unborn child and suffer from extreme and severe emotional distress.

31.

As instructed, in or about April 2019, Futrell again met with Ballard, who discussed Futrell's high risk pregnancy and provided Futrell with certain FMLA documents to be completed by Futrell's physician.

32.

In accordance with Ballard's instructions, Futrell brought the FMLA documents to Futrell's next medical appointment.  However, because Futrell's physician was not present, Futrell kept the documents in Futrell's vehicle.  Prior to the next medical appointment, Futrell's vehicle and FMLA documents were stolen.

33.

On or about April 22, 2019, Wylie attempted to convince Futrell to resign due to Futrell's high-risk pregnancy. Specifically, Wylie requested that Futrell resign because Futrell was on a "final" warning. According to Wylie, it was best for Futrell to resign and return to Southeastrans following childbirth because Futrell would likely be terminated due to additional absences related to the high-risk pregnancy. Wylie explained that, if Defendants terminated Futrell's employment, Futrell would not be permitted to resume employment following childbirth. Defendants' statements, actions, and threats to terminate employment during Futrell's the high-risk pregnancy caused Futrell to fear about the health of her unborn child, worry about maintaining necessary income to support her child, and suffer from extreme and severe emotional distress.

34.

Despite Wylie's efforts to force Futrell's resignation due to the high-risk pregnancy, Futrell refused to resign and stated that she would continue to perform as a Dispatcher diligently and professionally.

35.

Because Wylie had attempted to force Futrell to resign due to Futrell's pregnancy, Futrell feared that, if she complained about Wylie's conduct or the other

issues Futrell was experiencing at Southeastrans, Defendants would terminate Futrell's employment, which was needed to support Futrell's children.

### 36.

As a result of Wylie's efforts to force Futrell to resign due to the high-risk pregnancy, Futrell began experiencing stress and anxiety as Futrell persevered to maintain employment. In this regard, Futrell began to attempt to arrive early for shifts because employees who arrived an hour early received a point off their attendance records. Although experiencing exhaustion, nausea, and physical difficulties associated with the high-risk pregnancy and Defendants' unlawful conduct, Futrell continued to attempt to arrive early and perform diligently.

### 37.

In May 2019, Futrell called both Ballard and Wylie to discuss the theft of Futrell's vehicle and FMLA documents. Subsequently, Ballard faxed the FMLA documents to Futrell's physician. As instructed and requested, Futrell's physician completed and returned the FMLA documents to Ballard.

### 38.

Despite Wylie's attempt to force Futrell's resignation and feared termination of employment, based upon physician instructions, on or about May 10, 2019, Futrell took maternity leave.

39.

Defendants never advised Futrell that there was any issue with the maternity leave.

40.

On or about June 10, 2019, Futrell was admitted to the hospital due to complications and medical issues related to the high risk pregnancy.

41.

While Futrell was on maternity leave, Defendants terminated Futrell's employment.  On June 17, 2019, Ballard sent Futrell an e-mail stating, *inter alia*, that Ballard was in receipt of Ronson's *termination request* based upon unapproved time away from work and that, once processed, Futrell would receive a separation notice within three (3) days.  *However, Defendants never sent Futrell the separation notice.*  Rather, while exhausting administrative remedies through the EEOC, on or about February 12, 2020, Futrell obtained a copy of her personnel file, which included the Separation Notice, from Southeastrans' office.

42.

Under no uncertain terms, Defendants terminated Futrell's employment and punished Futrell based solely upon Futrell's pregnancy.

43.

Prior to the discriminatory termination of employment described herein, Futrell had not received negative reviews, disciplinary actions, or complaints concerning Futrell's professional performance.

44.

Other employees and individuals, outside of Futrell's protected class, were treated differently because these employees and individuals, who were not pregnant, were not terminated or otherwise subjected to adverse employment actions associated with breaks and attendance related to a high-risk pregnancy.

45.

Futrell was qualified and capable of resuming employment as a Dispatcher following maternity leave.

46.

As a result of Defendants' unlawful actions, Futrell has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

47.

Following Defendants' unlawful and tortious actions, on October 4, 2019, Futrell contacted the EEOC concerning Defendants' employment discrimination. That day, Linda Brown ("L. Brown"), EEOC, sent Futrell an e-mail, containing the

Form 5A Packet (Pre-Charge Inquiry, Charge of Discrimination Form, and the Instruction Sheet for Completing the EEOC Charge of Discrimination) and requesting that Futrell read, complete, and submit the forms by November 6, 2019. In accordance with L. Brown's instructions, on November 5, 2019, Futrell sent the EEOC the completed 5A Packet, including a verified Charge of Discrimination, dated October 29, 2019.[3] After Futrell sought receipt confirmation on November 6, 2019, L. Brown sent Futrell an e-mail, confirming receipt of the completed documents and advising Futrell that the case was assigned to Intake Personnel, who would contact Futrell.[4]

48.

On December 2, 2019, Futrell sent L. Brown an e-mail, inquiring about the status of the case because Futrell had not been contacted by Intake Personnel. That day, Regina Brown, Federal ISA, EEOC, ("R. Brown") contacted Futrell to schedule an interview. R. Brown interviewed, on December 12, 2019, Futrell concerning Defendants' discrimination. On December 17, 2019, R. Brown sent Futrell an e-

---

[3] Attached hereto, and expressly incorporated herein, as "Exhibit 2" is a true and correct copy of the October 29, 2019, Charge of Discrimination.

[4] Attached hereto, and expressly incorporated herein, as "Exhibit 3" is a true and correct copy of the "Inquiry" e-mail thread between Futrell and L. Brown.

mail, requesting that Futrell execute, scan, and return another charge of discrimination.

49.

Pursuant to R. Brown's instructions, on December 18, 2019, Futrell executed and returned the second charge of discrimination to the EEOC. On August 27, 2020, the EEOC sent Futrell the Dismissal and Notice of Rights. Rather than close the file because the Charge of Discrimination was untimely which was an option on the Notice of Right to Sue, the EEOC stated that, based upon an investigation, the EEOC was unable to conclude there was a violation of a statute.

**CLAIMS FOR RELIEF**

**COUNT I:**
**PREGNANCY DISCRIMINATION**
**IN VIOLATION OF TITLE VII AND ADA**
**(Against Defendant Southeastrans)**

50.

Futrell re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

51.

Title VII and the ADA prohibits employers from discriminating against employees because of pregnancy.

52.

Defendants violated Title VII and the ADA, such that a cause of action exists where discrimination on the basis of pregnancy was the causative agent of adverse actions directed at Futrell by Defendants.

53.

At all relevant times, Futrell was a pregnant female, qualified individual under the ADA, employee of Southeastrans, and a member of a protected class under Title VII and the ADA.

54.

At all relevant times, Futrell was qualified for her position, and capable of performing, as a Dispatcher.

55.

At all relevant times, Southeastrans was Futrell's employer, as defined by Title VII and ADA.

56.

At all relevant times, Wylie was Southeastrans' Director and Futrell's direct supervisor, responsible for, among other things, hiring and terminating Futrell's employment.

57.

At all relevant times, Wylie was Southeastrans' Director and Futrell's direct supervisor, responsible for, among other things, hiring and terminating Futrell's employment.

58.

Defendants explicitly stated that it would be best if Futrell resigned and returned to Southeastrans following the birth of Futrell's child because Futrell would likely be terminated due to additional missed days related to the high-risk pregnancy.

59.

With the knowledge that Futrell was pregnant, Defendants terminated Futrell's employment solely because of the pregnancy.

60.

While Futrell was on maternity leave, Defendants terminated Futrell's employment based solely upon Futrell's high-risk pregnancy.

61.

Defendants' termination of Futrell's employment due to pregnancy constitutes unlawful discrimination on the basis of pregnancy in violation of Title VII and the ADA.

62.

As a result of the termination of employment based solely upon Futrell's pregnancy, Futrell was treated less-favorably than similarly-situated, non-pregnant employees of Southeastrans in violation of Title VII and the ADA.

63.

Defendants willfully and wantonly disregarded Futrell's rights.

64.

Defendants willfully and wantonly disregarded Futrell's rights.

65.

Defendants discriminated against Futrell in bad faith.

66.

The effect of the conduct complained of herein has been to deprive Futrell of equal employment opportunity and to otherwise adversely affect Futrell's status as an employee solely because of Futrell's pregnancy.

67.

As a direct and proximate result of Defendants' intentional violation of Title VII, Futrell has been made the victim of acts that have adversely affected Futrell's psychological and physical well-being and, therefore, Defendants are liable for these damages.

## COUNT II
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE REHAB ACT
### (Against Defendant Southeastrans)

68.

Futrell re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

69.

The Rehab Act prohibits entities receiving Federal financial assistance from discriminating against otherwise qualified persons with disabilities in the terms, conditions, or privileges of employment.

70.

At all relevant times, Southeastrans received, *inter alia*, Federal financial assistance and funding related to Medicaid.

71.

At all relevant times, the relationship between Futrell and Southeastrans was a relationship of "employee" to "employer," such that a cause of action exists where discrimination based on disability is alleged to be the cause of an adverse action directed to the employee by the employer.

72.

At all relevant times, Southeastrans acted by and through its agents and employees, each of whom acted within the course and scope of their respective employment with and for Southeastrans.

73.

During Futrell's employment with Southeastrans, Futrell was a qualified individual with a disability, which substantially impaired one or more major life activities, as defined by the Rehab Act.

74.

Southeastrans regarded Futrell as having a qualified disability.

75.

During Futrell's employment, Southeastrans had notice and knew of Futrell qualified disability after, *inter alia*, Futrell notified Defendants of the high risk pregnancy, Futrell requested leave for medical appointments, and Futrell required frequent bathroom and water breaks associated with the high risk pregnancy.

76.

Although Futrell requested certain reasonable accommodations that would have allowed Futrell to continue performing the essential functions of Futrell's position, Defendants failed to grant a reasonable accommodation, impaired Futrell's ability to make medical appointments, and punished Futrell who needed to take bathroom and water breaks associated with the high-risk pregnancy.

77.

Defendants terminated Futrell's employment because of Futrell's qualified disability and request/need for a reasonable accommodation.

78.

Consequently, Futrell was unlawfully subjected to discrimination because of an actual disability, a record of disability, and/or being regarded as an individual with disability.

79.

As a proximate and direct result of Defendants' conduct, Futrell has suffered, and continues to suffer, damages, including, but not limited to, emotional distress, inconveniences, loss of income and benefits, for which Futrell is entitled to recover in an amount to be determined by the enlightened conscience of the jury.

80.

Defendants' actions were willful, intentional, malicious, and conducted in bad faith with callous and/or reckless indifference to Futrell's Federally-protected rights, thereby entitling Futrell to an award of punitive damages.

## COUNT III
## RETALIATION
## IN VIOLATION OF THE REHAB ACT
**(Against Defendant Southeastrans)**

81.

Futrell re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

82.

The Rehab Act prohibits retaliation against an employee who opposes discrimination on the basis of disability.

83.

Futrell requested reasonable accommodation for her qualified disability that impaired one or more major life activities, conduct protected by the Rehab Act.

84.

After learning of Futrell's high risk pregnancy, Defendants attempted to force Futrell to resign employment due to the pregnancy.

85.

Despite Defendants' efforts, Futrell refused to resign, advised Defendants that Futrell would continue to diligently perform, and even attempted to arrive early for scheduled shifts.

86.

Following Futrell's objection to Defendants' efforts to force resignation of employment and requests to continue performing under a reasonable accommodation(s), Defendants refused to approve time-off for doctor's visits and began to warn Futrell, who was required to take bathroom and water breaks associated with the high-risk pregnancy, before terminating employment due to Futrell's high risk pregnancy.

87.

Defendants' adverse employment actions against Futrell constitute unlawful retaliation against Futrell in violation of the Rehab Act.

88.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Futrell harm and/or were committed with reckless disregard of the harm causes to Futrell in derogation of Futrell's Federally-protected rights.

89.

As a direct and proximate result of Defendants' retaliation, Futrell has suffered financial losses, been deprived of employment, and otherwise lost compensation in the form of, *inter alia*, wages, insurance, retirement benefits, social security benefits, and other due benefits.

90.

Defendants' retaliation has also caused, continues to cause, and will cause Futrell to suffer injuries, warranting an award of compensatory and punitive damages in an amount to be determined at trial.

91.

Futrell is entitled to recover attorney's fees and litigation expenses.

**COUNT IV:**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**
**(Against Defendants Southeastrans and Wylie)**

92.

Futrell re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

93.

Defendants' statements, conduct, and behavior towards Futrell were intentional and reckless, extreme and outrageous, causing Futrell severe shame, humiliation, embarrassment, and emotional distress of a nature that no pregnant person should endure.

94.

Defendants' statements, conduct, and behavior towards Futrell demonstrate, among other things, a "retaliatory animus." For example, after Futrell advised Defendants of Futrell's high-risk pregnancy, Defendants began to interfere with Futrell's medical needs and unlawfully sought to force Futrell's resignation. When Futrell continued to diligently and professionally perform to save her employment, Defendants continued to pressure Futrell, resulting in medical complications associated with the high-risk pregnancy. And, despite the fact Futrell complied with Defendants' instructions, while on maternity leave, Defendants terminated Futrell's employment based solely on the high-risk pregnancy.

95.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Futrell and Futrell's income and/or livelihood during Futrell's known high-risk pregnancy.

96.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Futrell, Defendants knew that Futrell was pregnant.

97.

Defendants told Futrell that Futrell should resign, was receiving warnings, and that Futrell's employment was being terminated solely due to Futrell's pregnancy.

98.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Futrell.

99.

As a result of Defendants' conduct, Futrell has and will continue to suffer severe emotional distress, medical complications associated with the high-risk pregnancy, and other damages for which Futrell is entitled to recover.

## COUNT V
## NEGLIGENT RETENTION AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW
### (Against Defendant Southeastrans)

100.

Futrell re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

101.

As a result of the actions taken by Wylie, Futrell suffered, among other things, discrimination based on pregnancy and disability, as well as retaliation.

102.

Southeastrans owed Futrell a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory, retaliatory, or tortious conduct.

103.

By negligently retaining and supervising its employees, including Wylie, Southeastrans breached its duty to hire, retain, and supervise an employee who would lawfully behave.

104.

Southeastrans knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Futrell.

105.

By failing to engage in any corrective or remedial action, Southeastrans ratified, condoned, and/or adopted its employees' unlawful conduct.

106.

As a direct and proximate result of Southeastrans' negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by Southeastrans' employees, including Wylie, Futrell suffered damages.

107.

Southeastrans' negligent conduct entitles Futrell to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Futrell respectfully requests that this Court:

(1)     Grant Futrell a trial by jury as to all triable issues of fact;

(2)     Grant declaratory judgment that Futrell's rights under Title VII, ADA, and Rehab Act were violated;

(3)     Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(4)     Award compensatory damages in an amount to be determined by a jury;

(5)     Award appropriate back wages, future wages, and compensation for other damages in amounts to be shown at trial;

(6)     Award prejudgment interest on any award of back pay;

(7)     Award liquidated damages;

(8)     Award punitive damages in an amount reasonable and commensurate

with the harm done and calculated to deter such conduct in the future;

(9)     Award Futrell's attorneys' fees, costs, and disbursements; and

(10)    Award Futrell such further and additional relief as may be just and

appropriate.

Respectfully submitted, this 4th day of January, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center — Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Nakeeya Chantel Futrell*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

NAKEEYA CHANTEL FUTRELL,

      Plaintiff,

  vs.

SOUTHEASTRANS, INC., and
RONSON WYLIE

      Defendants.

CIV. ACTION NO. 1:20-cv-04674

The Honorable William M. Ray, II
The Honorable Regina D. Cannon

JURY TRIAL DEMANDED

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned certifies that this document has been prepared with a font and point selections approved by the Court in Local Rule 5.1(B) and that the foregoing **Amended Complaint for Damages** has been filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 4th day of January, 2021.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406

# Exhibit 1

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Nakeeya C. Futrell<br>1702 Poplar Pointe Drive, #1702<br>College Park, GA 30349 | From: Atlanta District Office<br>100 Alabama Street, S.W.<br>Suite 4R30<br>Atlanta, GA 30303 |

| | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 410-2019-07712 | Ivan Garcia,<br>Enforcement Supervisor | (404) 562-6860 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

| Enclosures(s) | | AUG 2 7 2020 |
| --- | --- | --- |
| | Darrell E. Graham,<br>District Director | *(Date Mailed)* |

cc:

| Chris Lee, General Counsel<br>SOUTHEASTRANS<br>4751 Best Rd<br>Ste 300<br>Atlanta, GA 30337 | Regina S. Molden, Esq.<br>MOLDEN & ASSOCIATES<br>Peachtree Center - Harris Tower, Suite 1245<br>233 Peachtree St., N.E.<br>Atlanta, GA 30303 |

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- ➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- ➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ➤ **Only one** major life activity need be substantially limited.
- ➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- ➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**
- ➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- ➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- ➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# Exhibit 2

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

For Official Use Only – Charge Number

| Personal Information | First Name: Wakuya   Mi: C   Last Name: Futrell |
|---|---|
| | Address: ▓▓▓▓▓▓▓▓   Apt.: ▓ |
| | City: ▓▓▓  County: ▓▓  State: ▓  Zip Code: ▓▓ |
| | Phone: ▓▓▓  Home ☐ Work ☐ Cell ☑ Email: ▓▓▓ |

**Who do you think discriminated against you?**

Employer ☑   Union ☐   Employment Agency ☐   Other Organization ☐

Organization Name: Southeastrans

Address: 1061 Cox Rd   Suite: 300

City: Atlanta   State: GA   Zip Code:   Phone:

**Why you think you were discriminated against?**

Race ☑   Color ☐   Religion ☐   Sex ☐   National Origin ☐   Age ☐

Disability ☑   Genetic Information ☐   Retaliation ☐   Other ☐ (specify)

**What happened to you that you think was discriminatory?**

Date of most recent job action you think was discriminatory:
Also describe briefly each job action you think was discriminatory and when it happened (estimate)

During the April I was further along in my pregnancy. I inform Mrs Ballard. As my months leads in May my doctor office Pay Pon information. From papers Regarding my race. Once I had my child I informed Team and Mrs Pamela Ballard of when I will Return. Mrs Ballard informed I was Terminated as of June 8 2019

I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my telephone and identity name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, or participating in an investigation of a job discrimination complaint, or opposing job discrimination.

I declare under penalty of perjury that the above is true and correct.

**Signature and Verification**

Signature: Wakuya Futrell   Date: 10/▓▓/▓▓

# Exhibit 3

**From: Nakeeya Futrell** <span style="background:black">████████████</span>
Date: Mon, Dec 2, 2019 at 12:13 PM
Subject: Re: Inquiry
To: LINDA BROWN <LINDA.BROWN@eeoc.gov>


Hello I was just writing to check the status of my case inquiry. Haven't heard anything. So im just following up

On Wed, Nov 6, 2019, 2:25 PM LINDA BROWN <LINDA.BROWN@eeoc.gov> wrote:

> Ms. Futrell
>
>
> It looks like your documents were received and your case has been assigned to one of our Intake personnel.  They will contact you (I'm unable to tell you when).
>
>
> **From:** Nakeeya Futrell <span style="background:black">████████████</span>
> **Sent:** Wednesday, November 06, 2019 2:16 PM
> **To:** LINDA BROWN <LINDA.BROWN@EEOC.GOV>
> **Subject:** Re: Inquiry
>
>
> I faxed my papers off yesterday wanted to know if you received them
>
>
> On Fri, Oct 4, 2019, 12:47 PM LINDA BROWN <LINDA.BROWN@eeoc.gov> wrote:
>
>> Good Afternoon Ms. Futrell:
>>
>>
>> Per our telephone conversation, please read and fill out the attached forms. **Fax them to 404-562-6909, Attn: INTAKE**, before November 6th.
>>
>>
>> CRTIU